**POST OFFICE SQUARE CO., Plaintiff,**

v.

**UNITED STATES of America,
Defendant.**

**Civ. A. No. 57–1197–S.**

United States District Court
D. Massachusetts.

Jan. 30, 1961.

David Burstein, Robert J. Richards, Jr., Hale & Dorr, Boston, Mass., for plaintiff.

Elliot L. Richardson, U. S. Atty., James C. Heigham and Andrew A. Caffrey, Asst. U. S. Attys., Boston, Mass., Abbot M. Sellers, Acting Asst. Atty. Gen., James P. Garland, Jerome Fink and Richard T. Mulcahey, Attorneys, Dept. of Justice, Washington, D. C., for defendant.

SWEENEY, Chief Judge.

This is an action to recover income taxes and interest thereon for the calendar year 1946 and the fiscal years ending April 30, 1948 and 1949, alleged to have been illegally assessed and collected. The amount claimed by the taxpayer is Forty-Two Thousand One Hundred Fifty-Nine Dollars ($42,159).

Findings of Fact

This case was heard entirely on a stipulation of facts, which the Court adopts as its findings of fact. The tax has been paid and all conditions precedent to the filing of this action have been complied with. The plaintiff-taxpayer is a Massachusetts corporation which during the relevant period maintained its books and records and filed its tax returns on the accrual basis of accounting. Until December 31, 1946, the plaintiff filed its federal income tax return on a calendar year basis, but on March 6, 1947, received permission to convert to a fiscal year basis. The first return thereafter covered the short period January 1, 1947, to April 30, 1947, and since then all returns have been filed on the basis of a fiscal year ending April 30.

In 1946 the plaintiff recovered a portion of Boston real estate taxes it had paid for the years 1940 through 1945 in the total amount of $97,840 [1], plus $11,816.26 in interest, and the city abated the 1946 tax in the amount of $16,000.

Also in the year 1946 the plaintiff incurred legal expenses in the amount of $33,139 in connection with this recovery and abatement.

In its 1946 return the plaintiff did not report as income the $97,840 in real estate taxes which had been refunded to it since no tax benefit had been derived from the payment of this amount to the City of Boston during the years 1940 through 1945, in all of which the plaintiff had incurred net losses. It did report as income the interest of $11,916.26, and claimed as a deduction the $33,139 in legal expenses.

The Commissioner assessed a deficiency for 1946 predicated on his disallowance of $25,960 of the claimed legal expense deduction. This amount represents that portion of the legal fee allocable to the recovery of real estate taxes which were not includible in income. The deficiency was paid and one of the issues now to be determined is the correctness of the Commissioner's ruling.

Two other, but interrelated questions arose as a result of the recovery of these taxes. During 1944 and 1945 the plaintiff incurred net operating losses slightly smaller in amount than the taxes refunded which are attributable to those years, and one of the issues presented is whether the refunded taxes must be applied retroactively to eliminate these net operating losses. The related question is whether the $97,840 was to any extent taxable income in 1946.

The remaining problem is whether the entire amount of real estate taxes assessed as of January 1 of each year may be accrued as a deduction after the plaintiff converted to a fiscal year basis for filing federal tax returns. The plaintiff, in its short period return, January 1, 1947, through April 30, 1947, deducted

| 1. | Year | Real.Estate Tax paid | Amount refunded in 1946 |
|---|---|---|---|
| | 1940 | $ 109,620 | $ 16,240 |
| | 1941 | 106,920 | 15,840 |
| | 1942 | 110,700 | 16,400 |
| | 1943 | 110,700 | 16,400 |
| | 1944 | 107,730 | 15,960 |
| | 1945 | 114,750 | 17,000 |

that portion of the estimated annual tax which was allocable to the four months covered by the return. However, in its returns for the fiscal years ended April 30, 1948, and 1949, it deducted the entire amount of taxes assessed as of January 1 of each year. For these last mentioned years the Commissioner assessed deficiencies on the ground that the real estate taxes should have been apportioned on a four-twelfths and eight-twelfths basis to reflect the amount actually due for each fiscal year. The Commissioner's position may be summarized as follows:

| Date of Assessment | Total Assessment | Period When Deductible and Amount | | |
| --- | --- | --- | --- | --- |
| | | 1/1/47–4/30/47 | Fy 1948 | Fy 1949 |
| Jan. 1, 1947 | $125,550 | | | |
| Jan. 1, 1948 | 144,180 | (4/12) $41,850 | (8/12) $83,700 | (8/12) $96,120 |
| Jan. 1, 1949 | 153,360 | | (4/12) $48,060 | (4/12) $51,120 |

On July 23, 1954, the plaintiff filed claims for refund for the calendar year 1946 and the fiscal years 1948 and 1949, which were formally disallowed on December 20, 1955, and this action was filed pursuant to 28 U.S.C. § 1346(a) (1).

1. As to the proper date of accrual of real estate taxes.

Section 43 of the Internal Revenue Code of 1939, 26 U.S.C.A. § 43, provides, insofar as relevant, as follows:

"The deductions and credits * * provided for in this chapter shall be taken for the taxable year in which 'paid or accrued' or 'paid or incurred', dependent upon the method of accounting upon the basis of which the net income is computed, unless in order to clearly reflect the income the deductions or credits should be taken as of a different period * * *."

The plaintiff argues that in accordance with Massachusetts law the entire amount of the Boston real estate taxes are assessed to the plaintiff as of January 1 of each year and become a lien on the property on that date. Therefore, these taxes are accrued and become a fixed liability as of January 1, and should be deductible in full on the return for the fiscal year ending April 30 of that same year.

I do not take the government's position to be in disagreement with this argument as far as it goes; but the government, relying on the proviso in Section 43, argues that the plaintiff's method of deducting taxes does not clearly reflect its income, and, in support, it cites a number of cases in which courts have upheld taxpayers who had allocated local real estate or personal property taxes. Carondelet Bldg. Co. v. Fontenot, 5 Cir., 1940, 111 F.2d 267; S. E. & M. E. Bernheimer Co. v. Com'r, 41 B.T.A. 249, affirmed Helvering v. S. E. and M. E. Bernheimer Co., 2 Cir., 1941, 121 F.2d 454; Citizens Hotel Co. v. Commissioner, 5 Cir., 1942, 127 F.2d 229; Commissioner of Internal Revenue v. Schock, Gusmer & Co., 3 Cir., 1943, 137 F.2d 750; Allen v. Atlanta Stove Works, Inc., 5 Cir., 1943, 138 F.2d 452.

The plaintiff places great reliance on Magruder v. Supplee, 1942, 316 U.S. 394, 62 S.Ct. 1162, 86 L.Ed. 1555 and United States v. Anderson, 1925, 269 U.S. 422, 46 S.Ct. 131, 70 L.Ed. 347. In Magruder v. Supplee, supra, the Supreme Court refused to allow the vendee of real estate to deduct the proportional part of real estate taxes attributable to that part of the tax year during which he was the owner of the property. Under the relevant local law tax liens had attached to the real estate prior to the sale, and the vendor had become personally liable for the taxes prior to the purchase. Since the vendee was not liable for the tax, the Supreme Court held he was not entitled to deduct on his income tax return that

portion of the tax which he had paid. But that case dealt with the allocation of taxes between parties not with an allocation between periods, the point raised in this case. Also, as the Court in Schock, Gusmer pointed out, while impliedly the decision supports the taxpayer's view, "(w)e do not believe that by innuendo or implication the Supreme Court would reverse a series of cases on another, although related, point without citing or referring to them in any way." 137 F.2d 750, 753.

The Anderson case stands for the proposition that a tax accrues when all the events have occurred which fix and determine the liability of the taxpayer to pay it. While this case also seems to support the plaintiff's contentions, its citation overlooks the fact that the Commissioner here based his decision on the exception in Section 43 to the general rule that deductions shall be taken when accrued.

The sole question, therefore, is whether the deduction of taxes computed on a calendar year basis clearly reflects income of a taxpayer reporting on a fiscal year basis, and I hold that it does not.

■ As far as the short-term return is concerned, the net income for that four-months' period is obviously not clearly reflected by a deduction of taxes attributable to twelve months, but rather by a fair apportionment of this annual cost to the income-producing period. The same consideration applies equally to the subsequent years. While in the long run, the difference may not be great, the plaintiff's income will be truly reflected only if the deductions taken are attributable to the income-producing period. On its books, the plaintiff throughout accrued these taxes in monthly installments, although they are levied annually.

2. As to the proper disposition of 1944 and 1945 net operating losses.

The parties have stipulated that the plaintiff incurred net operating losses of $15,811.58 and $12,981.71 for the years 1944 and 1945 respectively. For the same years it paid real estate taxes in the amounts of $107,730 and $114,750, of which it recovered in 1946 $15,960 and $17,000.

Under Section 122 of the 1939 Code, 26 U.S.C.A. § 122, a net operating loss for any taxable year beginning after December 31, 1941, and prior to January 1, 1948, shall be first applied against the net incomes of the two preceding taxable years, and then the excess of such loss over the sum of the net incomes of the two preceding years shall be deducted from the net incomes of the two succeeding taxable years. In this case, the plaintiff had incurred net operating losses for each taxable year from 1940 through 1945, and pursuant to Section 122 it claims to be entitled to deduct the 1944 and 1945 losses against its 1946 income.

It is the government's position that the amount of the refund attributable to the years 1944 and 1945 should be used to reduce the losses in those years to prevent the plaintiff from receiving a double tax benefit, namely by using the same item once in computing the loss deduction and again by excluding it from the 1946 income.

■ I shall deal with the recovery exclusion in the next section. On this point, whether these losses may be carried over to 1946, I find for the plaintiff. The annual accounting method does not permit consideration of events happening after the close of the taxable year and the reopening of the prior years for adjustment of deductions. Security Flour Mills Co. v. Commissioner, 1944, 321 U.S. 281, 64 S.Ct. 596, 88 L.Ed. 725, and cases cited therein.

3. As to the proper treatment of the refund.

The plaintiff in this case incurred net operating losses in each of the taxable years 1940 through 1945. By reason of such losses and the availability of the carry-back and carry-over deductions attributable thereto, no increase in the plaintiff's tax would result from disallowing the deductions in those years of the taxes recovered in 1946. The plaintiff did, however, receive, in 1946, a tax ad-

vantage by virtue of the net operating loss carry-overs from 1944 and 1945 which would not have been incurred but for the deductions of those portions of the tax which were refunded, and the question presented is whether this tax benefit should reduce the recovery exclusion and to what extent.

Section 22(b) (12), Internal Revenue Code of 1939, 26 U.S.C.A. § 22(b) (12), provides that the recovery by a taxpayer of a "prior tax" is excludible from gross income to the extent of the "recovery exclusion" which is "the amount, determined in accordance with the Regulation, * * * of the deductions or credits allowed, on account of such * * * prior tax * * * which did not result in a reduction of the taxpayer's tax * * *." Section 22(b) (12) (D).

The formula for computing the recovery exclusion is set forth in Treasury Regulations 111, Section 29.22(b) (12)–1.

"For the year of any recovery the section 22(b) (12) items which were deducted or credited for one prior year are considered as a group and the recovery thereon is considered separately from recoveries of any items which were deducted or credited for other years. This recovery is excluded from gross income to the extent of the recovery exclusion with respect to this group of items as (i) determined for the original year for which such items were deducted or credited (see 2 below, of this paragraph) and (ii) reduced by the recoveries in intervening years on account of all section 22(b) (12) items for such original year."

Subparagraph 2 provides that the recovery exclusion for the original year is the amount of the 22(b) (12) deductions which could be disallowed without causing an increase in any tax of the taxpayer, and that, for this purpose consideration must be given to the effect of net operating loss carry-overs and carry-backs.

The plaintiff suggests that the language of the statute which "is worded in terms of the recovery of a prior tax 'which did not result in a reduction of the taxpayers tax' indicates that reference to the past is intended for the purpose of determining the amount of any benefit previously gained on account of such tax recovery", (plaintiff's main brief, p. 7) and concludes that since it gained no benefit prior to 1946, the total amount recovered is the recovery exclusion. But this argument overlooks the repeated reference in the Regulations to tax benefits derived through net operating losses in preceding and succeeding taxable years.

■ Applying the regulations to the instant case, I find that the amount of the 22(b) (12) deductions for 1944 and 1945 which could be disallowed without causing an increase in any tax of the plaintiff is the amount of the refund attributable to those years less the amount of the net loss carry-overs, resulting in a recovery exclusion for 1944 of $148.42, and for 1945 of $4,012.29, and the inclusion in 1946 income of an amount equivalent to the net loss carry-overs.

Since my decision is not based on any double tax benefit theory, advanced by the government, I have not, in reaching it considered or relied on Lewyt Corp. v. Commissioner, 1954, 349 U.S. 237, 75 S. Ct. 736, 99 L.Ed. 1029. But I do note in passing, that that case turned on the language of a section of the Code, 122(d) (6), which is not here in issue.

4. As to the deductibility of legal expenses.

The plaintiff in 1946 incurred legal expenses in the amount of $33,139 in recovering (1) $97,840 in real estate taxes paid during the period 1940 through 1945; and (2) $11,916.26 interest on these taxes; and for (3) winning an abatement of $16,800 of the real estate tax assessment for the year 1946. The Commissioner allowed as a deduction only that portion of the legal fee attributable to items 2 and 3 which he computed at $3,597.91 and $3,581.15 respectively. He disallowed the remainder of the deduction on the ground that it "is allocable to one or more classes of income * * *

wholly exempt from the taxes \* \* \* "
Section 24(a) (5), Internal Revenue
Code of 1939, 26 U.S.C.A. (I.R.C.1939) §
24(a) (5).

The plaintiff's argument simply
is that income which is merely non-taxable does not necessarily constitute a
class of income wholly exempt from tax
within the meaning of Section 24(a) (5).
The short answer to this contention is
again provided by the Regulations, Treasury Regulations 111, Section 29.24–4(a),
which specifically include within the definition of "class of exempt income" "any
item or class \* \* \* excluded from
gross income under any provision of
Section 22 \* \* \* " and which state that
"the term 'exempt income' means income
which is not required to be included in
gross income". I therefore hold that the
Commissioner's disallowance of the deduction was correct in principle. However, in view of my decision that a portion of the $97,840 is includible in income, the deduction shall be redetermined
and a proportion allocable to the amount
of the refund included in income shall
be allowed.[2]

## Conclusions of Law

In view of the foregoing, I find and
rule that the plaintiff must apportion
the real estate tax deduction to correspond to the fiscal year on which its income tax returns are filed; (2) that the
net operating losses from 1944 and 1945
may be carried over against 1946 income;
(3) that the real estate taxes recovered
in 1946 are includible in income to the
extent of the tax benefit received by
virtue of the net operating loss carryovers; and (4) that the disallowance
of a portion of the legal expenses was
proper in principle, but that the amount
of the allowable deduction shall be determined in accordance with this opinion.

2. Treasury Regulations 111, Section 29.-
   24–4(b)—"If an item is indirectly attributable both to taxable income and exempt income a reasonable proportion

Judgment may be entered for the plaintiff after a recomputation, by the parties'
respective counsel, of the amount with
statutory interest.

thereof, determined, in the light of all the
facts and circumstances in each case,
shall be allocated to each."