**HACKENSACK WATER COMPANY**

v.

**The UNITED STATES.**

No. 308–62.

United States Court of Claims.

Nov. 12, 1965.

Karl R. Price, Washington, D. C., attorney of record, for plaintiff. Alvord & Alvord, Washington, D. C., of counsel.

Sheldon P. Migdal, Washington, D. C., with whom was Acting Asst. Atty. Gen. Richard M. Roberts, for defendant. C. Moxley Featherston, Lyle M. Turner and Philip R. Miller, Washington, D. C., of counsel.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS and COLLINS, Judges.

PER CURIAM:

This case was referred pursuant to former Rule 45(a) (now Rule 57(a)) to Trial Commissioner Mastin G. White, with directions to make findings of fact and recommendation for conclusions of law. The commissioner has done so in an opinion and report filed on August 20, 1964. The plaintiff has excepted to the opinion and certain of the findings of fact. The parties have filed briefs and the case has been submitted to the court upon oral argument of counsel. The court agrees with the commissioner's findings, with a slight change in finding 16, his opinion and his recommended conclusion of law, as hereinafter set forth, and hereby adopts the same as the basis for its judgment in this case. Plaintiff is therefore not entitled to recover and the petition is dismissed.

OPINION OF COMMISSIONER

The plaintiff is in this case seeks an income tax refund for the calendar year 1953. The problem involved in the litigation relates to the deductibility, under the rather unusual circumstances set out in the factual findings, of the property taxes which the State of New Jersey assessed against the plaintiff in 1953 and which the plaintiff subsequently paid in

1954. The plaintiff is a New Jersey corporation and conducts its business in that State.

New Jersey property taxes are assessed on October 1 of each year. Such taxes assessed against the plaintiff have always been paid by the plaintiff in quarterly installments on February 1, May 1, August 1, and November 1 of the calendar year immediately following the year of assessment. On its books of account, the plaintiff has always treated these taxes as an expense for the year in which such taxes are paid, although the plaintiff has otherwise kept its books on the accrual rather than the cash basis of accounting.

On October 1, 1953, New Jersey property taxes in the total amount of $1,377,248.39 were assessed against the plaintiff. These taxes for 1953 were subsequently paid by the plaintiff in quarterly installments during 1954; and they were charged by the plaintiff on its books of account as an expense for 1954.

In preparing its Federal income tax return for the calendar year 1953, the plaintiff deducted the New Jersey property taxes in the amount of $1,242,810.79 which were assessed against the plaintiff on October 1, 1952, which were paid in quarterly installments during 1953, and which were charged on the plaintiff's books as an expense for 1953. This was in accordance with a practice which the plaintiff had uniformly followed for at least 30 years of treating New Jersey property taxes as an expense for the year of payment and deducting such taxes on its Federal income tax return for the same year, although the plaintiff, as to other items of expense and income, kept its books of account and prepared its income tax returns on the accrual rather than the cash basis.

Beginning with its Federal income tax return for the calendar year 1954 and continuing thereafter, the plaintiff departed from its previous practice of utilizing New Jersey property taxes as a deduction for the year of payment, and deducted the property taxes which the State of New Jersey assessed against the plaintiff on October 1 of the year covered by the particular return. For example, on the plaintiff's income tax return for 1954, the plaintiff deducted the property taxes which the State of New Jersey assessed against the plaintiff on October 1, 1954, and which the plaintiff paid in 1955. Since 1954, therefore, the plaintiff, on each annual income tax return, has treated New Jersey property taxes in the same manner as other expenses and income, and has deducted such taxes on the accrual rather than the cash basis.

The plaintiff did not seek the approval of the Internal Revenue Service prior to making the change referred to in the previous paragraph, whereby New Jersey property taxes were no longer deducted for income tax purposes on the return for the year of payment, but were deducted on the return for the year of assessment. However, the Internal Revenue Service did not make any objection to the change when it audited the plaintiff's returns for 1954 and subsequent years.

It was because of the change previously mentioned that the New Jersey property taxes in the amount of $1,377,248.39 which were assessed against the plaintiff on October 1, 1953, and which the plaintiff paid in 1954, did not appear as a deduction on the plaintiff's Federal income tax return either for 1953 or for 1954. As indicated heretofore, the plaintiff followed the old system in preparing its return for 1953 and deducted the New Jersey property taxes which were *paid* in 1953 (such taxes having been assessed in 1952); and it followed the new system in preparing the return for 1954 and deducted the New Jersey property taxes which were *assessed* in 1954 (such taxes being paid subsequently in 1955). Hence, the New Jersey property taxes which were assessed against the plaintiff in 1953 and paid in 1954 did not appear on the plaintiff's income tax return for either 1953 or 1954.

On July 21, 1955, the plaintiff filed with the Internal Revenue Service a

claim for an income tax refund with respect to the year 1953. The basis asserted for the claim was that the plaintiff was entitled to a 1953 deduction for the property taxes in the total amount of $1,377,248.39 which the State of New Jersey assessed against the plaintiff on October 1, 1953, and which the plaintiff paid in 1954. This claim was denied on November 17, 1960, and the present litigation followed.

Since this claim relates to the deductibility of an expense in connection with the plaintiff's income tax for 1953, it involves the Internal Revenue Code of 1939, and particularly Section 41 of that Code (53 Stat. 24). Section 41 was in a part of the Code dealing with "Accounting Periods and Methods of Accounting"; and in 1953 it stated the "General Rule" to be in part as follows:

> The net income shall be computed upon the basis of the taxpayer's annual accounting period (fiscal year or calendar year, as the case may be) in accordance with the method of accounting regularly employed in keeping the books of such taxpayer; but * * * if the method employed does not clearly reflect the income, the computation shall be made in accordance with such method as in the opinion of the Commissioner [of Internal Revenue] does clearly reflect the income. * * *

It will be noted that, under the governing statutory provision, the items of income and the items of expense pertinent to the determination of a taxpayer's net income were to be computed "in accordance with the method of accounting regularly employed in keeping the books" of the taxpayer, unless the method employed did not "clearly reflect the income" of the taxpayer, in which case the computation was to be made "in accordance with such method as in the opinion of the Commission does clearly reflect the income."

The plaintiff's system of accounting in 1953 was generally on the accrual basis, but one item of expense, New Jersey property taxes, was treated on the cash basis. Therefore, when the plaintiff, in preparing its income tax return for 1953, deducted the New Jersey property taxes which the plaintiff paid in 1953 (such taxes having been assessed in 1952), but deducted other expenses and reported income on the accrual basis, the plaintiff was actually computing its net income "in accordance with the method of accounting regularly employed in keeping the books" of the plaintiff, as prescribed by Section 41 of the 1939 Code.

A hybrid system of accounting, which mixes the accrual and the cash bases, is generally looked upon with disfavor. See Massachusetts Mutual Life Ins. Co. v. United States, 288 U.S. 269, 273–274, 53 S.Ct. 337, 77 L.Ed. 739 (1933). However, the plaintiff's system of accounting in 1953, which treated New Jersey property taxes on the cash basis while treating other items of expense and income on the accrual basis, had been in effect for at least 30 years, and neither the plaintiff nor the Internal Revenue Service had indicated any dissatisfaction with it as failing to "clearly reflect the income" of the plaintiff. Moreover, there is no factual showing in the present case that the plaintiff's system of accounting in 1953, which formed the basis for the preparation of the plaintiff's income tax return for that year, actually did not "clearly reflect the income" of the plaintiff for 1953.

The possibility that taxpayers might wish to change their systems of accounting from time to time was contemplated, and a procedure whereby such changes might be effected was prescribed in the Treasury Regulations which were issued under the Internal Revenue Code of 1939. The pertinent provision stated in part as follows:

> (c) A taxpayer who changes the method of accounting employed in keeping his books shall, before computing his income upon such new method for purposes of taxation, secure the consent of the Commissioner. For the purposes of this section, a change in the method

of accounting employed in keeping books means any change in the accounting treatment of items of income or deductions * * *. Application for permission to change the method of accounting employed and the basis upon which the return is made shall be filed within 90 days after the beginning of the taxable year to be covered by the return. The application shall be accompanied by a statement specifying the classes of items differently treated under the two methods and specifying all amounts which would be duplicated or entirely omitted as a result of the proposed change. Permission to change the method of accounting will not be granted unless the taxpayer and the Commissioner agree to the terms and conditions under which the change will be effected. * * * [Treas.Reg. 118 (1939 Code), § 39.41–2.]

The validity of the quoted regulation was upheld by the courts in a number of decisions (e. g., Commissioner of Internal Revenue v. O. Liquidating Corporation, 292 F.2d 225 (3d Cir., 1961), cert. denied 368 U.S. 898, 82 S.Ct. 177, 7 L.Ed.2d 94; Wright Contracting Company v. Commissioner of Internal Revenue, 316 F.2d 249 (5th Cir., 1963), cert. denied 375 U.S. 879, 84 S.Ct. 147, 11 L.Ed.2d 110; American Can Company v. Commissioner of Internal Revenue, 317 F.2d 604 (2d Cir., 1963), cert. denied 375 U.S. 993, 84 S.Ct. 632, 11 L.Ed. 2d 479; cf. Beacon Publishing Co. v. Commissioner of Internal Revenue, 218 F.2d 697 (10th Cir., 1955)). The regulation was applicable not only to the making of a complete change in a system of accounting—from the accrual basis to the cash basis, or vice versa—but it was also applicable to the making of a change in the treatment of any significant item of income or expense (Commissioner of Internal Revenue v. O. Liquidating Corporation, supra, 292 F.2d at p. 230; Wright Contracting Company v. Commissioner of Internal Revenue, supra, 316 F.2d at p. 254).

Therefore, if the plaintiff desired to change its treatment of New Jersey property taxes for income tax purposes from the cash to the accrual basis with respect to the year 1953, the plaintiff had the privilege of applying to the Commissioner of Internal Revenue for permission to make such a change, but it was encumbent upon the plaintiff to file its application within 90 days after the beginning of 1953. This was not done. Indeed, there was no indication until July 21, 1955, that the plaintiff was dissatisfied with the manner in which its books of account had been kept, and its income tax return had been prepared, for the year 1953.

■ Furthermore, if the plaintiff had submitted a timely application for permission to change its treatment of New Jersey property taxes for the year 1953, the Commissioner of Internal Revenue would have been vested with broad discretion in determining whether to grant or deny permission for such a change (Commissioner of Internal Revenue v. O. Liquidating Corporation, supra, 292 F.2d at p. 231). The reason for the exercise of such discretionary power by the Commissioner was that a change in the method of reporting an important item of expense or of income would almost certainly result in some distortion of net income for the particular year in which the change was made, and it was encumbent upon the Commissioner to see that such distortion was not unduly detrimental to the revenue of the Government (Commissioner of Internal Revenue v. O. Liquidating Corporation, supra, at p. 230; American Can Company v. Commissioner of Internal Revenue, supra, 317 F.2d at p. 606). The Commissioner could accomplish this objective by withholding his consent until the taxpayer agreed to adjustments that would prevent the duplication of items of expense or the omission of income with respect to the year of transition (Commissioner of Internal Revenue v. O. Liquidating Corporation, supra, 292 F.2d at p. 230).

The necessity for the sort of control provided for in the pertinent regulation is illustrated by the present case. As stated earlier in this opinion, the plaintiff, in preparing its 1953 income tax return, deducted New Jersey property taxes in the amount of $1,242,810.79 which the plaintiff *paid* in 1953. If it had been the prerogative of the plaintiff to decide unilaterally—and retroactively in 1955—that it would also deduct on its 1953 return the New Jersey property taxes in the amount of $1,377,248.39 which were *assessed* against the plaintiff in 1953 but not paid in that year, this obviously would have resulted in a substantial distortion of the plaintiff's net income for 1953.

It is my opinion, therefore, that the Commissioner of Internal Revenue did not act erroneously in rejecting the claim which the plaintiff filed on July 21, 1955.

The conclusion stated in the preceding paragraph is not affected by an exchange of correspondence between the parties that occurred in 1954.

On May 17, 1954, the plaintiff wrote a letter to the Commissioner of Internal Revenue and asked for "a ruling with respect to the proper accrual date for federal income taxes of New Jersey real and personal property * * * taxes." The letter stated that the plaintiff "keeps its books on the accrual basis," and it explained that New Jersey property taxes were assessed each year as of October 1 and were paid during the succeeding year.

The Internal Revenue Service responded on July 15, 1954, to the plaintiff's request for a ruling. The response stated in part that:

> Real and personal property taxes accrue on October 1st of the year preceding the year payable.

With respect to the exchange of correspondence previously mentioned, it is to be noted in the first place that the plaintiff's letter merely asked a general question regarding "the proper accrual date for federal income taxes of New Jersey real and personal property * * taxes." There was nothing in or connected with the plaintiff's letter to indicate that the plaintiff had in mind (if it actually did at that time) the possibility of making a change, under the pertinent Treasury Regulation, in the accounting and income tax treatment of New Jersey property taxes. For example, the letter was not filed within 90 days after the beginning of a taxable year, it was not accompanied by the statement which the regulation required, and it did not request the consent of the Commissioner to any change. Actually, the plaintiff's letter misstated the facts, because it stated generally—and without referring to New Jersey property taxes as an exception—that the plaintiff "keeps its books on the accrual basis." It is not surprising, therefore, that the Internal Revenue Service merely replied to a general inquiry by furnishing general information to the effect that New Jersey property taxes "accrue on October 1st of the year preceding the year payable."

Furthermore, the letter from the Internal Revenue Service to the plaintiff was written on July 15, 1954, and the plaintiff did not file its income tax return for the year 1953 until about 2 months later. When the plaintiff filed its income tax return for 1953 on or about September 15, 1954, the plaintiff did not rely on the IRS letter to make a change, but continued the custom which it had followed for at least 30 years of deducting the New Jersey property taxes which were paid during the year covered by the return, rather than the New Jersey property taxes which were assessed against the plaintiff in such year.

The 1954 exchange of correspondence does not, in my judgment, provide any reasonable basis for the plaintiff's effort to obtain a refund in connection with its income taxes for 1953.

For the reasons indicated above, it is my opinion that the plaintiff is not entitled to recover. Accordingly, I recommend that the petition be dismissed.